Cite as 2023 Ark. App. 101

# ARKANSAS COURT OF APPEALS

DIVISION I
No. E-22-230

ARIA LAMBERT

APPELLANT

V.

DIRECTOR, DIVISION OF
WORKFORCE SERVICES; AND
CENTENE MANAGEMENT COMPANY

APPELLEES

Opinion Delivered February 22, 2023

APPEAL FROM THE ARKANSAS BOARD
OF REVIEW
[NO. 2021-BR-04943]

REVERSED AND REMANDED

**KENNETH S. HIXSON, Judge**

Appellant Aria Lambert appeals from a decision of the Arkansas Board of Review

(Board) denying her unemployment benefits. She contends that substantial evidence does

not support the Board's conclusion that she is disqualified from receiving benefits based on

the Board's finding that she was discharged from her last work for misconduct connected

with the work. Alternatively, Lambert argues that error occurred because she was not

permitted to compel production of her personnel file. To determine whether Lambert was

discharged for misconduct under the circumstances presented herein, we conclude that it

was necessary to issue a subpoena to compel production of her personnel file. Therefore, we

reverse and remand for further proceedings.

On appeal of an unemployment-compensation case, we review the evidence and all

reasonable inferences deducible therefrom in the light most favorable to the Board's

findings. *Jones v. Dir.*, 2019 Ark. App. 341, 581 S.W.3d 516. The Board's findings of fact are conclusive if supported by substantial evidence. *Id.* Substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion. *Id.*

After Lambert was terminated form her employment at Centene Management Company (Centene), she filed for unemployment benefits. The agency denied Lambert's claim because it found that Lambert was discharged as a direct result of her *intentional* poor job performance. Lambert appealed to the Appeal Tribunal, and in advance of the hearing, she filed a written request for a subpoena to be issued ordering Centene to produce a complete copy of her personnel file, including all internal administrative complaints against her. The Appeal Tribunal denied Lambert's request.

Lambert testified at the hearing, but Centene did not appear. Lambert testified that she began working for Centene as a concurrent medical review nurse in July 2019. Centene is a health-insurance provider[1] that operates multiple lines of businesses, including Arkansas Total Care, Ambetter, and Allwell. Each line of business reviews different types of requests for medical treatment to determine whether the treatment is medically necessary and, therefore, a covered expense under the respective insurance policy. The Arkansas Total Care line generally reviews requests for approval for medical treatment for patients in intermediate care facilities who have mental disabilities and/or special needs. These reviews are manually

---

[1]Due to the limited documentation submitted by Centene, it is unclear whether Centene is actually a health-insurance provider or a third-party review company that services health-insurance providers. For the purpose of this opinion the difference, if any, is not relevant.

performed. The Ambetter line generally reviews requests for approval for medical treatment for patients from a larger population of patients with a wide range of diagnoses different from the limited Arkansas Total Care line patients. The Ambetter reviews are generally performed using a computer software program. The record does not disclose what types of reviews were generated by the Allwell line. As a review nurse for the Arkansas Total Care line of business, Lambert's job required her to conduct medical-necessity reviews to determine whether Centene would cover a proposed course of treatment.

Lambert testified that during her first year of employment with Centene as an Arkansas Total Care review nurse, there were no complaints about her productivity. Lambert received a good annual report, a bonus, and a pay raise. Lambert stated that, during this time, she was conducting seven to nine reviews a day working for the Arkansas Total Care line of business.

Lambert testified that sometime between August and October of 2020, Centene began assigning her reviews in its Ambetter line of business in addition to her existing reviews in the Arkansas Total Care line. Lambert stated further that, due to a high turnover of nurses, her caseload increased from seven to nine reviews a day to fifteen to twenty reviews a day. Lambert stated that she had not been trained to conduct reviews for Ambetter patients, and she testified that the reviews for Arkansas Total Care and Ambetter were markedly different as explained above.

Lambert acknowledged that she had un-assigned tasks on several occasions between November 2019 and January 2020 pertaining to the additional Ambetter line of business.

Lambert explained that she "just couldn't work those tasks . . . because they were assignments [she] had not been trained on" and that she informed her supervisors of this. When her supervisors admonished Lambert to stop un-assigning tasks, Lambert explained to them that she had not been trained on how to conduct Ambetter claim reviews. Lambert stated that she had asked her supervisors to be trained on Ambetter reviews "from day one" when her caseload was changed, but that it never happened. Lambert stated that she was "pretty much thrown over to the Ambetter side with no training." She analogized it to "throwing you to the wolves or sink or swim type scenarios."

Centene apparently discussed these un-assigned files with Lambert. Subsequently, on January 6, 2021, Lambert received from Centene a Last Chance Agreement (LCA). The LCA stated that Lambert had unassigned several tasks in November and December of 2020 and warned Lambert that she could not un-assign tasks in the future without prior approval of her supervisor. The LCA provided in relevant part:

> There have been multiple conversations & emails with your people leader and manager, specifically on 11/19/2020, 11/21/2020, 12/2/2020, 12/4/2020, 12/9/2020 and Sr Director on 11/19/2020 & 11/25/2020 communicating expectations for work assignments explaining that un-assigning work that has been assigned by your supervisor is unacceptable and should not continue. Following repeated instructions not to un-assign work you continued this behavior on 12/11/2020, 12/14/2020, 12/15/2020, 1/04/2020 and 1/05/2021 . . . . We have discussed with you verbally and via email that you should not un-assign any tasks assigned to you by your supervisor without first discussing it . . . . Aria will complete all tasks assigned to her without un-assigning tasks.

The LCA stated, "Failure to meet the above expectations could lead to further disciplinary action up to termination."

4

Centene terminated Lambert's employment on February 25, 2021. In a termination review form, Centene stated that Lambert was terminated because she had un-assigned two tasks from herself on January 26, 2021, without discussions with her supervisor in violation of the LCA but, interestingly, she "was eligible for rehire."

Lambert disagreed with Centene and testified that, after receiving the LCA from Centene, she did not un-assign the two tasks on January 26 without first speaking to her supervisor. Lambert stated that she never intentionally performed poorly or disregarded Centene's interests. Lambert also stated that she had never un-assigned any tasks because it was too much work but, rather, because she had not been trained in those areas. Lambert testified that, with proper training, she would have been qualified to perform the Ambetter reviews.

The Appeal Tribunal affirmed the agency's decision and denied Lambert unemployment benefits. The Appeal Tribunal found that Lambert's "repeated acts of commission, omission, or negligence despite progressive discipline constitutes sufficient proof of intentional poor performance" and, therefore, that Lambert "was discharged from last work for misconduct in connection with the work." Lambert then appealed to the Board, and the Board issued a decision rejecting Lambert's claim that she had been denied a fair hearing based on the unavailability of her personnel file. The Board affirmed and adopted the Appeal Tribunal's decision disqualifying her from benefits.

In this appeal from the Board's decision denying unemployment benefits, Lambert first challenges the Board's finding that she was discharged from her work for misconduct

connected with the work, arguing that this finding is not supported by substantial evidence. She further argues that error occurred below because a subpoena should have been issued to compel production of her personnel file. We agree with Lambert's second argument.

A claimant is disqualified from receiving unemployment benefits if he or she is discharged from his or her last work for misconduct in connection with the work. Ark. Code Ann. § 11-10-514(a)(1) (Supp. 2021). Misconduct in connection with the work shall not be found for instances of poor performance unless the employer can prove that the poor performance was intentional. Ark. Code Ann. § 11-10-514(a)(4)(A). Subdivision (a)(4)(B) provides that an individual's repeated act of commission, omission, or negligence despite progressive discipline constitutes sufficient proof of intentional poor performance.

Our appellate jurisprudence makes clear that to constitute misconduct, there must be an element of intent. *Wilson v. Dir.*, 2017 Ark. App. 171, 517 S.W.3d 427. Misconduct requires more than mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good-faith errors in judgment or discretion. *Id.* To constitute misconduct there must be an intentional or deliberate violation, a willful and wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest a wrongful intent or evil design. *Id.*

The issue in this case is whether Lambert intentionally disregarded Centene's interests. While Lambert acknowledged that she un-assigned some files for review, Lambert testified that there was no intentional disregard of Centene's interests because she was

repeatedly asked to perform tasks for which she had not been trained. However, one email from Centene mentioned that the Lambert was offered the opportunity to shadow an employee for guidance. Also, in a questionnaire submitted by Centene, it was asked to note and attach the documents in support of its claim that Lambert was discharged for unsatisfactory work performance. Centene attached only a two-page document titled "Policy and Procedure." Centene did not attach any portion of Lambert's personnel file that supported its conclusion that Lambert was discharged for unsatisfactory work performance. The "Policy and Procedure" document provides in part:

> Employees whose conduct violates company standards or policies or whose work performance does not meet expected standards may be subject to some or all of the following types of actions, depending on employee history and the fact and circumstances of the current situation. When issues arise, they should generally first be handled through setting expectations and providing coaching and feedback. *These coaching and feedback sessions should be documented (e.g.: people leader's notes, email recap, Employee Coaching Log etc.) and maintained by the people leader.* Should the issues persist, or additional issues surface, more formal discipline may result as follows: . . . [issuance of an LCA followed by possible termination].

(Emphasis added.) In its discharge form provided to the Board, Centene stated that Lambert was discharged for not meeting expectations. However, in the discharge form Centene was also asked whether there were prior warnings given to the claimant and, if so, to provide copies of these warnings. Centene left this section bank, and none of this documentation was provided. This documentation was crucial to the issue of whether Lambert had engaged in intentional misconduct despite progressive warnings as Centene had alleged. Due to the lack of attachments and contemporaneous documentation by Centene, we conclude that Lambert should have had the opportunity to review her personnel file, which may have

7

contained information relevant to Lambert's employment history and alleged disciplinary warnings such as "*coaching and feedback sessions* [which] *should be documented (e.g.: people leader's notes, email recap, Employee Coaching Log etc.) and maintained by the people leader*." (Emphasis added.)

Arkansas Code Annotated section 11-10-315 (Supp. 2021) provides that "the Director of the Division of Workforce Services, the chair of an appeal tribunal, the members of the Board of Review, and any duly authorized representative of any of them shall have the power to . . . issue subpoenas to compel the attendance of witnesses in the production of books, papers, correspondence, memoranda, and other records deemed necessary as evidence in connection with disputed claims or the administration of this chapter." Arkansas Code Annotated section 11-10-524(b)(1) (Supp. 2021) provides that in an appeal from the agency decision "the appeal tribunal, after affording the parties a reasonable opportunity for a fair hearing, and on the basis of the record, shall" reach its decision.

Lambert's personnel file, which she requested but was denied, had a direct bearing in deciding the core issue at hand of whether Lambert was discharged for misconduct in connection with her work. More specifically, Lambert's personnel file would undoubtedly shed light on the nature of Lambert's alleged progressive discipline, if any, and whether she had engaged in intentional misconduct. Under the narrow circumstances presented by this case, we hold that the Appeal Tribunal and the Board erred in denying Lambert's request to subpoena her personnel file in advance of the hearing. The file was of particular importance because no representative of the employer was present at the hearing to provide evidence on

8

the issue in question. Therefore, we reverse the Board's decision, and we remand for production of Lambert's personnel file and a new hearing to determine whether Lambert is eligible for unemployment benefits.

Reversed and remanded.

VIRDEN and MURPHY, JJ., agree.

*Trevor Townsend*, Center for Arkansas Legal Services, for appellant.

*Cynthia L. Uhrynowycz*, Associate General Counsel, for appellee.